GReen, J.
delivered the opinion of the court.
The facts of this case are presented in the agreement of the parties, which is as follows, to wit, “It is agreed in this case, that Philip Hoover was the owner of the house and lot in the declaration mentioned and described at the time of his death, that he died in the year 1831, having made a will which was duly proven and recorded, and a copy of which is as follows, to wit: “I, Philip Hoover, of Nashville, in the county of Davidson, and State of Tennessee, do make and publish this my last will and testament, I give and bequeath to my daughter, Sarah Elizabeth Hoover and' her heirs, my house and lot on Market Street, in the town of Nashville, being twenty-three feet ninejnehes front, and being the same that was conveyed to me by John Young, through his attorney in fact, Robert Woods. I order and direct that the rents and profits arising therefrom shall be appropriated for her support, maintenance, and education, but if such premises shall rent for more than will accomplish these purposes, whatever surplus there may be, I give and bequeath to my wife, Mrs. Sarah Ann Hoover, and my son, James Priestly, (only son) and after my said daughter marries, or comes of *448 age, all the rents and profits of said house, and the house tenement itself, to be Iter’s exclusively. I also give and bequeath to my daughter, Sarah Elizabeth, above named, all my right and title to a negro girl, named Willey, and her increase, now in possession of Mrs. Wilson, of Nashville, and eonveyed to me by Waiter Willis by bill of sale, bearing date 8th January, 1829. It is my will, that after my debts are paid, all the rest and residue of my estate of every description shall be divided and apportioned equally between my said wife and my two children aforesaid. I appoint my friend, Addison East, of Nashville, executor of this will, and direct he shall not be compelled to give security for the trust hereby reposed in him. I do further will and devise, that if my said daughter should die before she is of age and without issue, her estate herein is to go to the survivor. In testimony whereof, I have hereunto set my hand and seal, this 8th day of March, in the year of our Lord, 1831.
“PHILIP HOOVER, [seal.]
“Published and declared in the presence of the undersigned, James Grizzard, Samuel McManus. ”
It is also agreed, that James Priestly Hoover, the devisee and son of the testator in said will mentioned, died before his father, the said Philip Hoover; that Sarah Elizabeth Hoover, the daughter and devisee of the testator in said will mentioned, survived her father, and has since, but before the commencement of this action died under twenty-one, leaving no issue — she never having been married; that the mother of said Elizabeth and James P. Hoover, and the widow of the testator, is the defendant in this suit, and was in the possession of the premises mentioned in the declaration, at and before the commencement of this suit; that Philip Hoover, the testator, left two brothers, him surviving, to wit, Abel Hooveyand Michael Hoover, both of whom have since died. The lessors of the plaintiff are their heirs at law, and also are the heirs at law of Sarah Elizabeth Hoover, unless the act of North Carolina or this state makes the mother the heir of the daughter either for life or otherwise. The question ;s, what interest, if any, the defendant, the' widow of said Philip Hoover, takes in the premises, under the will of the *449 said Philip Hoover; or what right and interest she has in the premises by law as the mother of said Elizabeth Hoover.
The circuit court gave judgment for the defendant, from which judgment the plaintiffs prosecute this appeal.
In construing the will before us, the first question presented for the consideration of the court is, as to the meaning and application of the word survivor, as used in the last clause. The court, in endeavoring to arrive at a knowledge of the intention of the testator, must take into consideration the circumstances as they existed at the time the will was made. The testator necessatily used the language employed in his will, in reference to the state and condition of his family at the time he employed the expressions, and if we can be satisfied as to the meaning that was in his mind, when he used the language, we must give to his will the same meaning, how different soever the circumstances of his family may have become. To whom then does the word survivor refer? We answer, to the son of the testator, James Priestly Hoover. In the clause but one, before the one in which this word -“survivor” occurs, he had devised the residue of his estate equally between his wife and two children aforesaid. Then he appoints his executor, and then comes the clause in which he devises the estate he had given to his daughter, in case of her death before she was of age, without issue, to the- survivor. The children were united in his mind in the residuary clause, in which he speaks of them as his “two children aforesaid,” .and keeping them in his mind as his two children, and declaring that if one should die without issue, the estate should go to the survivor, he could only mean by the survivor, the other one of the two that thus occupied his attention. If the clause appointing the executor had not been introduced between these two clauses, it is not probable any doubt would have existed as to the meaning of the testator. But we think the introduction of this intermediate clause should make no difference in the construction. It contains no disposition of property — is merely the nomination of his executor, and was not calculated to draw off his mind from that which occupied it in the preceding clause. If this clause, appointing the executor, were omitted, and those two, in which the property *450 js disposed of, restored to their natural order, it would read' 1 follows: It is my will, that after the payment of my debts, ... , r / , . . all the rest and residue oí my estate ot every description, sp,an ^ divided and apportioned equally between my said wife and my two children aforesaid. I do further will and desire, that if my said daughter should die before she is of age, and without issue, her estate herein devised to go to the survivor. Considered in this connexion, it is most apparent that the testator, by the word survivor, intended his son only. That he meant'by that word his wife, if she survived, has no plausible reason for its support.
But it is insisted in argument, that he meant both his wife and son, and that the word is to be construed as though it had been written in the plural, and for this Powell on Devises, 420, 421, 422, is cited. It is true, that the construction contended for, has been given to that word, very properly in some cases, but they were cases where the meaning could not be otherwise ascertained, and the bequest would be void for uncertainty. But there is no such reason in this case. If this word “survivor” be permitted to have its natural meaning, there is no difficulty in understanding it to refer to the other of the two children mentioned in the preceding clause. To suppose the testator intended his son and wife both, is not justified by the connexion in which they had been mentioned in the previous clause of the will, nor by the relation in which they stood to him. The son, should he survive his sister, would by law be the heir to her estate, and as we are not to suppose, unless the purpose be manifest, that a testator intends to disinherit his heir, so neither are w e to suppose in this case, that the testator intended to give this property a different direction from that in which it would go by the law. But we are asked to violate this obvious principle, and to turn the singular number in which this word is used into the plural, to make it include this devisee, whose name had been used in no such connexion as to make it probable she was intended, and all this, when it has a natural, easy, and almost ir-resistable reference to the son only.
Upon the whole, we do not doubt but that the devise in question was to the testator’s son, James Priestly Hoover. *451 Having this view of the case, and seeing that James Priestly Hoover died before his sister, the question which has been so ably and elaborately debated at the bar, whether this devise over, should Sarah Elizabeth die without issue, would be gobd as an executory devise, does not arise for the decision of the court. From the views heretofore taken of this will, it follows, that Sarah Elizabeth acquired the entire fee to the estate devised to her; and as her brother died before the death of the testator, she would have acquired precisely the same estate by descent, if he had made no will, that she took as devisee under the will. This being the case,, it is well settled, that one who holds the same estate by devise, that the law casts on him by descent, is in by descent and not by devise. 6 Cruise’s Dig. 135, § 1, 8, and 13. Regarding Sarah Elizabeth as holding this property by descent from her father, the only retraining question is, who is entitled to it, her mother or her paternal uncles.
This question is settled by the case of Roberts vs. Jackson, 4 Yer. Rep. 308, where it is decided, that the words •“otherwise acquired,” used in the the act of 1784, c 22, § 7, and 1784, c 10, § 3, do not mean lands descended from either parent. The estate of Sarah Elizabeth Hoover does not therefore vest in her mother for life, but descends to the lessor of the plaintiffs. The judgment of the circuit court must be reversed, and this court proceeding to give such judgment as that court should have given, order that judgment be entered for the plaintiffs in error.
Judgment reversed.